IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-CR-30080-DWD |
| | ) |
| COURTNEY P. SCOTT, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

In 2017, Defendant Courtney P. Scott was sentenced to 140 months in prison after pleading guilty to interference with commerce by robbery (Hobbs Act robbery), brandishing a firearm during a crime of violence, and possession of a firearm by a previously convicted felon. (Doc. 42). His anticipated release date is March 7, 2026. Now before the court is Scott's motion for compassionate release under 18 U.S.C. 3582(c)(1)(A). (Doc. 47). He requests that his sentence be reduced because his health conditions, which include obesity, hyperthyroidism, hypertension, high cholesterol, and borderline diabetic condition, put him at greater risk of suffering severe illness should he contract COVID-19. The United States of America has responded in opposition to the motion (Doc. 49), and it is ripe for ruling. For the reasons delineated below, Scott's motion for compassionate release is denied.

### THE FIRST STEP ACT OF 2018

The general rule is that sentences imposed in criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Compassionate release long has been an exception to

this general rule. Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it through the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A) (2018). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion, provided that they exhaust administrative rights prior to seeking relief in the courts. Here, the United States has not raised an exhaustion-related affirmative defense.

After a compassionate release motion is filed, the Court may reduce the term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). If such reasons exist, the Court must consider the sentencing factors in 18 U.S.C. § 3553(a). The defendant bears the burden of showing that he is entitled to relief under the First Step Act. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

Where a motion is brought by the defendant, the Court may consider the Sentencing Commission's policy statements but is not bound by them. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). With respect to *pro se* motions, the Commission's policy statement is nearly identical to § 3582(c)(1)(A), and the application notes provide further guidance regarding when extraordinary and compelling reasons exist for reducing a sentence: (A) the medical condition of the defendant; (B) the age of the defendant, and (C) family circumstances. *Application Notes*, U.S.S.G. § 1B1.13. Additionally, the policy statement requires the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13.

## DISCUSSION

Scott argues that he has extraordinary and compelling reasons for a sentence reduction. He points out that he is obese with a body mass index greater than 30 and has several ongoing medical conditions that increase his risk of serious complications should he contract COVID-19. He also argues that FCI-Greenville, where he was incarcerated at the time he filed his motion, had rampant rates of COVID-19 transmission despite BOP statistics to the contrary. Beyond these justifications for considering his compassionate release motion, Scott maintains that he indicia of rehabilitation that weigh in favor of early release. He has served over 50% of his sentence, and, while in prison, he has rehabilitated himself by pursuing religious education, completing a variety of vocational training, and serving as a suicide watch companion.

Scott currently is incarcerated at FCI-Ashland in Ashland, Kentucky. *Find an inmate*, Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc (last accessed November 18, 2021). FCI-Ashland currently has zero inmates and only one staff member who have tested positive for COVID-19. *Coronavirus*, BOP, https://www.bop.gov/coronavirus (last accessed November 22, 2021). While six inmates at FCI-Ashland have died from COVID-19, 287 inmates and 103 staff members have recovered from an infection. *Id.* Of the 1,248 inmates housed at FCI-Ashland, 1057 have been fully vaccinated, a rate of 84.7%. *COVID-19*, BOP, https://www.bop.gov/coronavirus (last accessed November 18, 2021). Additionally, the Bureau of Prisons has implemented a Modified Operations Plan to combat the spread of COVID-19 in all of its facilities. *BOP Modified Operations*, BOP, https://www.bop.gov/

coronavirus/covid19_status.jsp (last accessed November 18, 2021).

Scott argues that his obesity, hyperthyroidism, hypertension, high cholesterol, and borderline diabetic condition, as well as the BOP's inadequate protections place him at high risk of contracting a severe case of COVID-19 if he remains incarcerated. According to the Centers for Disease Control ("CDC"), obesity, hypertension, and diabetes make a person more likely to get severely ill from COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed November 18, 2021). The CDC offers no specific guidance on the effect of hyperthyroidism or high cholesterol on COVID-19 lethality, but there are conditions not listed on the CDC website that could place a person at higher risk of severe illness from COVID-19. *Id.*

While he has serious medical conditions, Scott's medical records indicate that he received his first dose of the Pfizer COVID-19 vaccine on April 6, 2021 (Doc. 49-2). There is nothing to suggest that Scott has not received a second dose of the vaccine to date or that the vaccine is otherwise unavailable to him. According to the CDC, "COVID-19 vaccines are safe and effective at preventing COVID-19, including severe disease and death from . . . the Delta variant." *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last accessed November 18, 2021). The National Institutes of Health ("NIH") also recognizes that the COVID-19 vaccine "appear[s] to have similar efficacy among individuals with and without obesity." *COVID-19 Vaccination and Obesity: Optimism and Challenges*, NIH, https://pubmed.ncbi.nlm.nih.gov/33506642/ (last accessed November 18, 2021). The

COVID-19 vaccine appears to be efficacious for people with hyperthyroidism, hypertension, high cholesterol, and diabetes, as well.[1] As the Seventh Circuit recently explained, for most prisoners who have access to a COVID-19 vaccine, "the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

Even accepting that the cumulative effect of Scott's medical conditions may increase his risk of severe adverse reactions to a COVID-19 infection, the record does not support finding that a risk of infection and adverse consequences present an extraordinary and compelling reason for immediate release at this time. Similarly, the rates of COVID-19, and any alleged misreported data, at Greenville no longer affect Scott, as he has been transferred to FCI-Ashland. The risk of contracting COVID-19 at FCI-Ashland currently is extremely low, as there is only a single active staff infection. Additionally, the rate inmate vaccination is high. Even if the rates of COVID-19 transmission were to escalate, Scott has received a vaccine that is extremely effective at preventing hospitalization and death. *See Pfizer-BioNTech (COMIRNATY) COVID-19 Vaccine Questions*, CDC, https://www.cdc.gov/vaccines/covid-19/info-by-

---

[1] *See* (Hyperthyroidism) *COVID-19 and Vaccines*, BTF, https://www.btf-thyroid.org/covid-19-and-vaccines (last accessed November 18, 2021); (Hypertension) *COVID-19 and High Blood Pressure: Cause for Concern?*, VCU Health, https://www.vcuhealth.org/news/covid-19/covid-19-and-high-blood-pressure-cause-for-concern (last accessed November 18, 2021); (High Cholesterol) *Do COVID-19 Vaccines Interfere with Common Prescription Drugs?*, AARP, https://www.aarp.org/health/conditions-treatments/info-2021/covid-vaccine-medication-interaction.html (last accessed November 18, 2021); (Diabetes) *How Do COVID-19 Vaccines Affect Type 2 Diabetes?*, Medical News Today https://www.medicalnewstoday.com/articles/covid-vaccine-and-diabetes-type-2#medications (last accessed November 18, 2021).

product/pfizer/pfizer-bioNTech-faqs.html (last accessed November 18, 2021). His chances of being gravely injured by COVID-19 are diminishing now that he is fully vaccinated and as the infection rates at his correctional facility remain low.

Under these facts, the Court finds that COVID-19 combined with Scott's health conditions and the situation at FCI-Ashland do not constitute extraordinary and compelling reasons for sentence reduction. Because extraordinary and compelling reasons for a reduction do not exist, the Court need not weigh Scott's rehabilitation arguments under the § 3553(a) factors.

## Conclusion

For the above-stated reasons, Defendant Courtney P. Scott 's motion for compassionate release (Doc. 47) is **DENIED**.

**SO ORDERED.**

Dated: December 2, 2021

_____
DAVID W. DUGAN
United States District Judge